# EXHIBIT B

E-FILED

11/03/2017

FRESNO COUNTY SUPERIOR COURT

By: D Standing, Deputy

1  DAVID N. BARRY, ESQ. (SBN 219230)
   THE BARRY LAW FIRM
2  11835 W. Olympic Blvd., Suite 440
   Los Angeles, CA 90064
3  Telephone: 310.684.5859
   Facsimile: 310.862.4539
4
   Attorneys for Plaintiff, CARRIE KIRKSEY
5

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8           **FOR THE COUNTY OF FRESNO – B. F. SISK COURTHOUSE**

9  CARRIE KIRKSEY, an individual,          Case No.        17CECG03959
10
11              Plaintiff,                **COMPLAINT FOR DAMAGES**
12         v.
13
14 FORD MOTOR COMPANY, A Delaware
15 Corporation; and DOES 1 through 20,
                                          *Assigned for all purposes to the Hon.*
16 inclusive,                             *in Dept.*
17              Defendants.
18
19

20     1.   Breach of Implied Warranty of Merchantability under the Song-Beverly Warranty Act.

21     2.   Breach of Express Warranty under the Song-Beverly Warranty Act.

22     3.   Fraud.

23     JURY TRIAL DEMANDED.

24

25

26

27

28

-1-
**COMPLAINT FOR DAMAGES**

PLAINTIFF CARRIE KIRKSEY, an individual, hereby alleges and complains as follows:

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1.   Plaintiff CARRIE KIRKSEY is an individual, residing in the County of Fresno, in the State of California.

2.   Defendant, FORD MOTOR COMPANY (hereinafter referred to as "Manufacturer"), is a corporation doing business in the County of Fresno, State of California, and, at all times relevant herein, was/is engaged in the manufacture, sale, distribution, and/or importing of Ford motor vehicles and related equipment.

3.   The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants, Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to set forth their true names and capacities when they have ascertained them. Further, Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a "Doe" is responsible in some manner for the events and happenings herein referred to and caused injury and damage to Plaintiff as herein alleged.

4.   Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants, and each of them, were the agents, servants, and/or employees of each of their Co-Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the things hereinafter alleged Defendants, and each of them, were acting in the course and scope of their employment as such agents, servants, and/or employees, and with the permission, consent, knowledge, and/or ratification of their Co-Defendants, principals, and/or employers.

5.   On or about December 1, 2013, defendants Manufacturer and Does 1 through 20 inclusive, manufactured and/or distributed into the stream of commerce a new 2014 Ford Focus, VIN 1FADP3K28EL327416 (hereinafter referred to as the "Vehicle") for its eventual sale/lease in the State of California.

///

///

-2-
**COMPLAINT FOR DAMAGES**

1    6.    On or about January 1, 2014, Plaintiff purchased, for personal, family, and/or
2  household purposes, the subject Vehicle from the Seller for a total consideration over the term of
3  the installment contract of approximately $25,000.00. The purchase agreement is in the possession
4  of Defendants.

5    7.    The subject Vehicle was/is a "new motor vehicle" under the Song-Beverly Warranty
6  Act.

7    8.    Along with the purchase of the Vehicle, Plaintiff received written warranties and other
8  express and implied warranties including, but not limited to, warranties from Manufacturer and
9  Seller that the Vehicle and its components would be free from all defects in material and
10 workmanship; that the Vehicle would pass without objection in the trade under the contract
11 description; that the Vehicle would be fit for the ordinary purposes for which it was intended; that
12 the Vehicle would conform to the promises and affirmations of fact made; that Defendants, and
13 each of them, would perform any repairs, alignments, adjustments, and/or replacements of any
14 parts necessary to ensure that the Vehicle was free from any defects in material and workmanship;
15 that Defendants, and each of them, would maintain the utility of the Vehicle for Three (3) years or
16 36,000 miles and would conform the Vehicle to the applicable express warranties. (A copy of the
17 written warranty is in the possession of the Defendants).

18   9. Plaintiff has duly performed all the conditions on Plaintiff's part under the purchase
19 agreement and under the express and implied warranties given to plaintiff, except insofar as the
20 acts and/or omissions of the Defendants, and each of them, as alleged herein, prevented and/or
21 excused such performance.

22   10.   Plaintiff has delivered the Vehicle to the Manufacturer's authorized service and
23 repair facilities, agents and/or dealers, including Seller, on at least four (4) separate occasions
24 resulting in the Vehicle being out of service by reason of repair of nonconformities. Repair
25 Orders/Invoices are in the possession of Defendants.

26 ///
27 ///
28 ///

11.     By way of example, and not by way of limitation, the defects, malfunctions, misadjustments, and/or nonconformities with Plaintiff's Vehicle include the following: Plaintiff has submitted the subject Vehicle for defects and malfunctions, specifically for issues with the transmission.

12.     Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Plaintiff notified Defendants, and each of them, of the defects, malfunctions, misadjustments, and/or nonconformities existent with the Vehicle and demanded that Manufacturer or its representatives repair, adjust, and/or replace any necessary parts to conform the Vehicle to the applicable warranties.

13.     Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that they could and would conform the Vehicle to the applicable warranties, that in fact they did conform the Vehicle to said warranties, and that all the defects, malfunctions, misadjustments, and/or nonconformities have been repaired; however, Manufacturer or its representatives failed to conform the Vehicle to the applicable warranties because said defects, malfunctions, misadjustments, and/or nonconformities continue to exist even after a reasonable number of attempts to repair was given.

14.     The subject vehicle's transmission is Ford's "PowerShift Transmission" and was designed and marketed as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission and offered it as the sole "Automatic" option in the subject vehicle.

15.     Traditional manual transmissions use a drive-controlled clutch. By pressing and releasing a foot pedal, the driver engages and disengages the engine from the transmission, allowing the vehicle to travel smoothly while the driver manually changes gears.

16.     In contrast, typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter. The torque converter substitutes for the manual transmission through fluid medium.

///

///

-4-
**COMPLAINT FOR DAMAGES**

17.    While typical automatic transmissions offer increased convenience, they are generally less fuel efficient and slower-shifting than their manual counterparts. This is because the torque converter transfers power less efficiently than a clutch. As a result, Ford marketed and sold its "PowerShift Transmission" as a best of both worlds alternative offering a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.

18.    Ford's PowerShift Transmission, while sometimes referred to as an automatic, is actually a set of computerized manual transmission. It lacks a torque converter, instead using two "dry" clutches to directly engage and disengage the engine with and from the transmission. Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

19.    Ford designed the subject vehicle's computerized "automated manual" transmission in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, and efficiency. According to Ford's own press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance."

20.    Theoretically, an automated manual transmission should have the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manually shifted vehicle. In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns.

21.    The PowerShift Transmission contains one or more design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle (the "Transmission Defect").

///

///

**COMPLAINT FOR DAMAGES**

22.     The Transmission Defect causes unsafe conditions, including, but not limited to, the subject vehicle suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion. These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic. Even more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed. As a result, drivers of the affected vehicles have experienced their cars lurching forward into intersections at red lights due to the failure of their braking efforts to stop the car.

23.     The Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including transmission replacement.

24.     Beginning as early as 2010, Defendant knew or should have known that the PowerShift Transmission contained one or more design and/or manufacturing defects that negatively affect the drivability of the subject vehicle and cause safety hazards.

25.     Before offering vehicles with the PowerShift Transmission for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models. European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

26.     In addition to having years of feedback and testing from its European and Australian dual-clutch transmission, according to Ford, its team:

> "logged approximately three years or 60,000 man-hours of computer-aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity in only 24 months real time to prove the THF concept was production ready."

///

///

27.     Torque Hole Vectoring is a program in the PowerShift Transmission that uses a combination of computer algorithms and computer aided tools to fill the torque hole, or what is more commonly perceived as a hesitation, while shifting. Ford claimed the Torque Hole Vectoring technology would create a smoother driving experience for the customer.

28.     Despite these claims, consumers have not experienced a smoother ride from Torque Hole Vectoring or any other technology incorporated in the PowerShift Transmission. Multiple reviews in automotive journals and customer complaints documented and confirmed that the transmissions in other vehicles were exhibiting the defects, malfunctions, misadjustment, and nonconformities that the Plaintiff now complain of.

29.     In a 2011 *New York Times* review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

30.     In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same *New York Times* article that "[i]t is quite a challenge to deliver something that is very, very fuel-efficient and yet feels like conventional automatic, and there are some balances and some tradeoffs that we make."

31.     As a result of the Transmission Defect, in 2010 and 2011, Ford even issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code..."

32.     Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

-7-
**COMPLAINT FOR DAMAGES**

33.     Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

34.     Ford issued two separate TSBs in May of 2011, both covering the Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement…"

35.     Another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine RPM flare when coasting to a stop."

36.     The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a top, rough idle on deceleration coming to a stop, intermittent engine idle on deceleration coming to a stop, intermittent engine idle fluctuation at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

37.     In May of 2012, Ford issued a "Customer Satisfaction Program" Program Number 12B37." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience rough or jerky automatic transmission shifts. In addition, the vehicle may experience roll back when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems.

38.     Because Ford will not notify owners of the vehicle's equipped with the PowerShift Transmission, including Plaintiff, that the transmission is defective, they are subjected to dangerous driving conditions that often occur without warning.

39.     Defendant knew about and concealed the Transmission Defect present in the subject vehicle, along with the dangerous safety and driveability problems, from Plaintiff at the time of sale, lease, and repair thereafter. In fact, instead of repairing the defects in the subject vehicle's

-8-

1  transmission, Ford either refused to acknowledge their existence, or performed ineffectual software
2  upgrades that simply masked the defects.

3      40.    If Plaintiff knew about these defects at the time of sale or lease, Plaintiff would not
4  have purchased or leased the subject vehicle.

5      41.    Ford had superior and exclusive knowledge of the transmission defect, and knew or
6  should have known that the defect was not known or reasonably discoverable by Plaintiff before
7  she purchased or leased the subject vehicle.

8      42.    Plaintiff is informed and believes and based thereon alleges that before Plaintiff
9  purchased or leased the subject vehicle, and since at least 2010, Ford knew about the Transmission
10 Defect through sources not available to consumers, including pre-release testing data, early
11 consumer complaints about the transmission defects to Ford and its dealers, testing conducted in
12 response to those complaints, high failure rates and replacement part sales data, aggregate data
13 from Ford dealers, among other internal sources of aggregate information about the problem.

14     43.    The amount in controversy exceeds TWENTY FIVE THOUSAND DOLLARS
15 ($25,000.00), exclusive of interest and costs, for which Plaintiff seeks judgment against
16 Defendants, together with equitable relief. In addition, Plaintiff seeks damages from Defendants,
17 and each of them, for incidental, consequential, exemplary, and actual damages including interest,
18 costs, and actual attorneys' fees.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1

## FIRST CAUSE OF ACTION

2

### Breach of Implied Warranty of Merchantability under Song-Beverly Warranty Act

3

### Against all Defendants

4       44.     Plaintiff realleges each and every paragraph (1-43) and incorporates them by this

5   reference as though fully set forth herein.

6       45.     The distribution and sale of the Vehicle was accompanied by the Manufacturer

7   implied warranty that the Vehicle was merchantable.

8       46.     Furthermore, Defendants, and each of them, impliedly warranted, inter alia, that the

9   Vehicle would pass without objection in the trade under the contract description; that the Vehicle

10  was fit for the ordinary purposes for which it was intended; that the Vehicle was adequately

11  assembled; and/or that the Vehicle conformed to the promises or affirmations of fact made to

12  Plaintiff.

13      47.     As evidenced by the defects, malfunctions, misadjustments, and/or nonconformities

14  alleged herein, the Vehicle was not merchantable because it did not have the quality that a buyer

15  would reasonably expect, because it could not pass without objection in the trade under the contract

16  description; because it was not fit for the ordinary purposes for which it was intended; because it

17  was not adequately assembled; and/or because it did not or could not be conformed to the promises

18  or affirmations of fact made to Plaintiff.

19      48.     Upon discovery of the Vehicle's nonconformities, Plaintiff took reasonable steps to

20  notify Defendants, and each of them, within a reasonable time that the Vehicle did not have the

21  quality that a buyer would reasonably expect and, further, justifiably revoked acceptance of the

22  nonconforming Vehicle.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**COMPLAINT FOR DAMAGES**

49.     Plaintiff hereby gives written notice and justifiably revokes acceptance of the nonconforming Vehicle under the Commercial Code sections 2607 and 2608. Plaintiff further demands that the Manufacturer cancel the sale, take back the nonconforming Vehicle, refund all the money expended, pay the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted, and/or pay damages under the Commercial Code sections 2711, 2714, and 2715. Defendants, and each of them, have, however, refused to comply.

50.     Plaintiff hereby gives written notice and makes demand upon Manufacturer for replacement or restitution, pursuant to Song-Beverly. Defendants, and each of them, knew of their obligations under Song-Beverly; however, despite Plaintiff's demand, Defendants and each of them, have intentionally failed and refused to make restitution or replacement pursuant to Song-Beverly.

51.     As a result of the acts and/or omissions of the Defendants, and each of them, Plaintiff has sustained damage in the amount actually paid or payable under the contract, plus prejudgment interest thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact amount thereof when that amount is ascertained.

52.     As a further result of the actions of Defendants, and each of them, Plaintiff has sustained incidental and consequential damages in an amount yet to be determined, plus interest thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact amount of incidental damages when that amount is ascertained.

53.     As a further result of the actions of Defendants, and each of them, Plaintiff has sustained damages equal to the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted.

54.     As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to Song-Beverly, Plaintiff, in addition to her other remedies, is entitled to the recovery of her attorneys' fees based upon actual time expended and reasonably incurred, in connection with the commencement and prosecution of this action.

## SECOND CAUSE OF ACTION

### Breach of Express Warranty under Song-Beverly Warranty Act

#### Against all Defendants

55.     Plaintiff realleges each and every paragraph (1-54) and incorporates them by this reference as though fully set forth herein.

56.     The Vehicle had defects, malfunctions, misadjustments, and/or nonconformities covered by the warranty that substantially impaired its value, use, or safety to Plaintiff.

57.     Plaintiff delivered the Vehicle to Manufacturer or its authorized repair facilities for repair.

58.     Defendants, and each of them, failed to service or repair the Vehicle to match the written warranty after a reasonable number of opportunities to do so.

59.     The acts and/or omissions of Defendants, and each of them, in failing to perform the proper repairs, part replacements, and/or adjustments, to conform the Vehicle to the applicable express warranties constitute a breach of the express warranties that the Manufacturer provided to Plaintiff, thereby breaching Defendants' obligations under Song-Beverly.

60.     Defendants, and each of them, failed to perform the necessary repairs and/or service in good and workmanlike manner. The actions taken by Defendants, and each of them, were insufficient to make the Subject Vehicle conform to the express warranties and/or proper operational characteristics of like Vehicles, all in violation of Defendants' obligations under Song-Beverly.

61.     Plaintiff hereby gives written notice and makes demand upon Manufacturer for replacement or restitution, pursuant to Song-Beverly. Defendants and each of them, knowing their obligations under Song-Beverly, and despite Plaintiff's demand, failed and refused to make restitution or replacement according to the mandates of Song-Beverly. The failure of Defendants, and each of them, to refund the price paid and payable or to replace the Vehicle was intentional and justifies an award of a Civil Penalty in an amount not to exceed two times Plaintiff's actual damages.

///

62.     As a result of the acts and/or omissions of Defendants, and each of them, and pursuant to the provisions of the Song-Beverly, Plaintiff is entitled to replacement of the Vehicle or restitution of the amount actually paid or payable under the contract, at Plaintiff's election, plus prejudgment interest thereon at the legal rate. Plaintiff will seek leave of Court to amend this Complaint to set forth the exact amount of restitution and interest, upon election, when that amount has been ascertained.

63.     Additionally, as a result of the acts and/or omissions of Defendants, and each of them, and pursuant to Song-Beverly, Plaintiff has sustained and is entitled to consequential and incidental damages in amounts yet to be determined, plus interest thereon at the legal rate. Plaintiff will seek leave of the court to amend this complaint to set forth the exact amount of consequential and/or incidental damages, when those amounts have been ascertained.

64.     As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to Song-Beverly, Plaintiff, in addition to other remedies, is entitled to the recovery of her attorneys' fees based upon actual time expended and reasonably incurred, in connection with the commencement and prosecution of this action.

///
///
///
///
///
///
///
///
///
///
///
///

### THIRD CAUSE OF ACTION

#### Fraud

#### Against all Defendants

65.     Plaintiff realleges each and every paragraph (1-64) and incorporates them by this reference as though fully set forth herein.

66.     Defendants intentionally misrepresented that the subject vehicle was not defective and in safe condition, when in fact the subject vehicle was sold with a PowerShift transmission which Defendants knew to be defective.

67.     Defendants intended that Plaintiff would rely on the representation that the subject vehicle was free from defects and in safe condition. Plaintiff did in fact rely on Defendants' representation in her decision to purchase the subject vehicle.

68.     Had Plaintiff known of the subject vehicle's defects, Plaintiff would not have purchased the subject vehicle. Therefore, Plaintiff's reliance on Defendants' representations with regard to the subject vehicle was a substantial factor in causing Plaintiff's harm.

69.     Defendants, and each of them, willfully deceived Plaintiff with intent to induce him to purchase a vehicle with a defective transmission, that had she been made aware of, she would not have otherwise purchased.

70.     Defendants, and each of them, deceived Plaintiff by suggesting that the subject vehicle was not defective and in safe condition at the time of sale, when in fact, it was sold with a defective transmission that is known to cause the vehicle to, by way of example and not limitation, jerk, shudder, and stall.

71.     Defendants, and each of them, deceived Plaintiff by asserting that the subject vehicle was not defective and in safe condition at the time of sale, when it was not. Furthermore, Defendants were aware that the subject vehicle was equipped with the defective transmission and had no reasonable ground for believing the vehicle was not defective or in safe condition.

///

///

-14-
COMPLAINT FOR DAMAGES

72.    Defendants, and each of them, deceived Plaintiff by suppressing the fact that the subject vehicle was equipped with a defective transmission at the time of sale. Furthermore, had Defendant disclosed the subject vehicle's defects to Plaintiff, Plaintiff would not have purchased the subject vehicle. Therefore, Defendant suppressed facts concerning the subject vehicle and its transmission with the intention to mislead Plaintiff to purchase the subject vehicle.

73.    Defendants, and each of them, deceived Plaintiff by promising that the subject vehicle would conform to the applicable warranties, when Defendants knew that the subject vehicle's defects could not be repaired. Therefore, Defendant had no intention of honoring the applicable warranties that came with the purchase of subject vehicle.

74.    As a direct and proximate result of Defendants' misrepresentations or omissions of material fact, Plaintiff has suffered damages, including actual, consequential, and incidental damages, according to proof.

75.    Plaintiff hereby alleges material facts pertaining to the purchase of the vehicle were misrepresented, and, therefore, Plaintiff is entitled to rescission of the Contract, and restitution in an amount according to proof at hearing.

76.    Defendants' conduct constitutes conduct that is oppressive, fraudulent, or malicious, also entitling Plaintiff to punitive damages under Civil Code §3294.

///
///
///
///
///
///
///
///
///
///
///
///

-15-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

      A. For replacement or restitution, at Plaintiff's election, according to proof;

      B. For incidental damages, according to proof;

      C. For consequential damages, according to proof;

      D. For a civil penalty as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages;

      E. For punitive and statutory damages where available;

      F. For actual attorney's fees, reasonably incurred;

      G. For costs of suit and expenses, according to proof;

      H. For the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;

      I. For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

      J. For pre-judgment interest at the legal rate;

      K. Such other relief the Court deems appropriate.

Date: October 30, 2017                 THE BARRY LAW FIRM

By: _____
DAVID N. BARRY, ESQ.
Attorney for Plaintiff.
CARRIE KIRKSEY